UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ABDULKARIM AL HAMATI, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 4:09CV00676 ERW |
| EMILIO GONZALEZ, et al., | ) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on Defendants' Motion to Dismiss for Lack of Jurisdiction [doc. #4]. The Court heard arguments from the parties on this Motion at a hearing held on October 15, 2009.

## I.  BACKGROUND[1]

This litigation arises out of the attempts of Plaintiff Abdulkarim Al Hamati ("Plaintiff") to become a United States citizen, in the face of years of inaction and unresponsiveness from United States Citizenship and Immigration Services ("CIS") following the initial denial of his application for naturalization in 2004.

Defendants in this lawsuit are Emilio Gonzalez, Michael Jaromin, and Chester Moyer (collectively, "Defendants"), directors and officers of CIS. Plaintiff is a Yemeni citizen who entered this country on a visitor visa in August 1996 and married a U.S. citizen, Alicia Chapman ("Chapman"), in October 1997. Seeking to secure Plaintiff's ability to remain in the United

---

[1] The Court's recitation of the facts is taken from Plaintiff's Complaint [doc. #1], along with certain matters outside the pleadings, which the Court is permitted to consider in the context of a factual challenge to subject matter jurisdiction. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990).

States, Chapman filed a Form I-130, Petition for Alien Relative, with CIS in February 1998, and on the same day, Plaintiff filed a Form I-485 – an application for lawful permanent resident status ("LPR status") as the spouse of a U.S. citizen. He was granted conditional LPR status in April 1999, and CIS removed those conditions in March 2002, making Plaintiff a lawful permanent resident.

Plaintiff then filed his Application for Naturalization, Form N-400, later that same month. Following an examination by CIS in September 2002, the agency denied his application in February 2004, finding that it was supported by a fraudulent Yemeni birth certificate. In response, Plaintiff timely filed a Form N-336 in April 2004, which allows an individual whose Form N-400 has been denied by CIS to obtain a hearing on that decision. Later in April 2004, however, CIS rescinded Plaintiff's LPR status, based on its prior finding that he had submitted a fraudulent birth certificate. In May 2004, Plaintiff timely filed a Form I-290A, a request for CIS to reconsider or reopen its decision to rescind his LPR status.[2]

In May 2009, at which point CIS had not acted on Plaintiff's N-336 or I-290A for approximately five years, Plaintiff filed the present lawsuit, asking the Court to review and grant his initial N-400 naturalization application or remand the matter to CIS with instructions to fully rule on the pending forms. Plaintiff asserts jurisdiction under 8 U.S.C. § 1447(b), which allows district courts to conduct a hearing on a naturalization application if CIS does not rule on it within 120 days of the date of examination, and under the Administrative Procedure Act ("the APA"), based on CIS's failure to adjudicate his N-336 and I-290A.

---

[2] There is apparently some degree of confusion as to what form should be used for filing a motion with CIS to reopen and reconsider a rescission of resident status. Although the correct choice of form is not an issue in this case, the Court mentions this as an aside because it does not wish to suggest that Form I-290A is currently the appropriate form – and based on the Court's limited research, it appears that it is not.

In June 2009, a little over a month after Plaintiff filed his Complaint, CIS formally denied Plaintiff's I-290A request to reconsider the rescission of his resident status, concluding that Plaintiff had failed to demonstrate that his birth certificate was not fraudulent. As a result, CIS instituted removal proceedings against Plaintiff on the grounds that he had attempted to procure admission to the United States by fraud or willful misrepresentation. Then, in July 2009, CIS went on to deny Plaintiff's N-336, basing its decision on the pending removal proceedings.[3] Defendants now assert that Plaintiff's claims must be dismissed because the Court lacks jurisdiction to conduct a *de novo* review of his naturalization application based on the delay in ruling on his N-336, and also because CIS's rulings on his I-290A and N-336 have mooted his requests for adjudication of those matters.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a party is permitted to challenge a federal court's jurisdiction over the subject matter of the complaint. When the Court's subject matter jurisdiction is challenged, at issue is the Court's "very power to hear the case." *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990) (internal citations and quotations omitted). The party invoking the jurisdiction of the federal court has the burden of establishing that the court has the requisite subject matter jurisdiction to grant the requested relief. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

For an action to be dismissed under Rule 12(b)(1), the complaint must either be successfully challenged on the factual truthfulness of its assertions, or successfully challenged on

---

[3] In response to that ruling, Plaintiff filed a related case before this Court, *Al Hamati v. Gonzalez*, 4:09CV01174 ERW, in which Plaintiff seeks *de novo* review of his naturalization application pursuant to 8 U.S.C. § 1421(c). That statute allows for such review following a naturalization applicant's exhaustion of his administrative remedies.

its face. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). "In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Id.* In a factual challenge, in contrast, the court is permitted to consider matters outside the pleadings and need not assume that the facts alleged in the plaintiff's complaint are true. *See Osborne*, 918 F.2d at 729 n.6; *Titus*, 4 F.3d 590 at 593 (court may consider "competent evidence such as affidavits, deposition testimony, and the like").

**III. DISCUSSION**

Defendants contend that Plaintiff's claims must be dismissed because (1) the Court lacks subject matter jurisdiction under 8 U.S.C. § 1447(b) to review his naturalization application, given that CIS issued its final ruling on his N-400 prior to the filing of this suit; and (2) CIS's rulings on his N-336 and I-290A have mooted his claims under the APA to have CIS rule on those matters. Plaintiff argues that his N-336, his request for a hearing on the denial of his N-400, is in effect a continuation of his original application, and therefore that the Court may exercise subject matter jurisdiction over his claims under § 1447(b). Plaintiff further asserts that his APA claims are not moot because § 1447(b) gives the Court exclusive jurisdiction over his application, and that as a result, CIS's denials of his N-336 and I-290A after he filed his Complaint were of no effect.[4]

    *A.    Jurisdiction under § 1447(b)*

Pursuant to 8 U.S.C. § 1446(a-b), before granting or denying an alien's application for naturalization – his N-400 – CIS must, with certain limited exceptions, conduct an investigation of

---

[4] Plaintiff also argues that the Court may conduct a *de novo* review of his naturalization application under 8 U.S.C. § 1421(c), but as Plaintiff concedes, his companion case before this Court addresses his right to judicial review under that statute.

4

the applicant, followed by a personal examination. In order to ensure that CIS proceeds with those investigations and examinations in a timely manner, and accordingly that naturalization applications receive prompt attention, Congress passed § 1447(b) as an outlet for judicial review in the event of delay, which provides that:

> If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

*See also United States v. Hovsepian*, 359 F.3d 1144, 1162 (9th Cir. 2004) (en banc) (§ 1447(b) review is *de novo*).

The problem with Plaintiff's attempt to base jurisdiction on § 1447(b) is that CIS denied his N-400 in February 2004, more than five years before he filed his Complaint. While it is true that CIS issued that ruling more than 120 days after the examination – in fact, it took over a year – a petitioner for naturalization does not retain the right to bring an action under § 1447(b) after CIS has acted on the application. *See Langer v. McElroy*, 2002 WL 31789757, at *3 (S.D.N.Y. 2002) ("While the INS may have taken more than the 120 days to make its decision, it eventually did make such a determination and thus jurisdiction [under § 1447(b)] cannot be based on this premise."); *see also Adiemereonwu v. Gonzalez*, 2005 WL 1206878, at *4 (N.D. Tex. 2005). This may not be the result where the plaintiff files his § 1447(b) suit with the district court before CIS adjudicates his N-400,[5] but that is not the case presented here.

---

[5] Although the Eighth Circuit has yet to weigh in on the issue, other courts of appeals considering the effect of § 1447(b) have found that it grants exclusive jurisdiction to the district courts, meaning that once a district court has assumed jurisdiction under that provision, CIS no longer has any authority to take action on a naturalization application. *See, e.g.*, *Bustamonte v. Napolitano*, 582 F.3d 403, 407-08 (2d Cir. 2009); *Etape v. Chertoff*, 497 F.3d 379, 384 (4th Cir. 2007); *Hovsepian*, 359 F.3d at 1159.

In spite of this, Plaintiff contends that his N-336 was essentially a continuation of his original naturalization application, such that CIS's failure to rule on it would permit a district court to take jurisdiction under § 1447(b). This argument is foreclosed by the plain language of § 1447(b), which refers only to CIS's "failure to make a determination *under section 1446*." (emphasis added). The ability to file an N-336, to request a hearing on the denial of a naturalization application, is set forth not in § 1446, but in § 1447(a); § 1446 deals exclusively with CIS's resolution of the original naturalization application – the N-400. In short, because § 1447(a) is the provision that allows an individual to file an N-336, CIS's decision on an N-336 – or lack thereof – is not a "determination under section 1446" for which § 1447(b) jurisdiction is available. *See also Langer*, 2002 WL 31789757, at *3 ("The plain language of [§ 1447(b)] . . . reveals that jurisdiction lies only during any potential time lag between [the filing of an N-400 and its resolution]. . . . Although this apparent loophole in the statute is troubling, it is unfortunately a matter to be addressed to the United States Congress rather than the district courts . . . .").

Furthermore, as Defendants note, it would be almost impossible for CIS to adjudicate an applicant's N-400 *and* his subsequent N-336 within the time-frame provided by § 1447(b). In order to do so, CIS would need to rule on the N-400, issue a denial, wait the prescribed thirty days for the applicant to file an N-336, set the hearing, and issue a second decision on the N-336 – all within 120 days. In addition to the logistical nightmare that scenario presents, 8 C.F.R. § 336.2(b) specifies that CIS should set a hearing on an N-336 within 180 days of its receipt, strongly suggesting that CIS is not intended to resolve both the N-400 and the N-336 within 120 days.

Last, the case cited by Plaintiff for the opposite proposition – that § 1447(b) jurisdiction does extend to CIS's failure to act on an N-336 – is not persuasive. *See Omeiri v. Dist. Dir.,*

*Bureau of Citizenship & Immigration Servs.*, 2007 WL 2121998 (E.D. Mich. 2007).[6] In *Omeiri*, CIS, for reasons not explained in the court's opinion, denied the plaintiff's N-400 before it had completed his background check. *Id.* at *1. The plaintiff filed an N-336 and CIS held a hearing, at which point it informed him that it could not make a final decision on his N-400 because the background check was still pending; in response, the plaintiff filed a district court suit under § 1447(b). *Id.* In its motion to dismiss, CIS did not argue that the court lacked jurisdiction under § 1447(b) over the pending N-336, but rather that jurisdiction was not proper under § 1447(b) because it had not yet completed its "examination" – the event that triggers the 120-day period – given that the background check was still pending. *Id.* at *2. Although the court found that jurisdiction existed under § 1447(b), in that the "examination" in that provision refers to the actual interview and not to the accompanying investigation, it did not expressly consider or accept Plaintiff's argument that § 1447(b) confers jurisdiction over a pending N-336. *See id.* at *2-*3. Nor did the court implicitly accept that premise, as CIS conceded that it had never reached a final decision on the plaintiff's N-400. *See id.* at *1.

The Court therefore concludes that Defendants are entitled to dismissal of Plaintiff's claims under § 1447(b) for lack of subject matter jurisdiction. That provision does not permit district courts to assume jurisdiction over a naturalization application where CIS adjudicates the application before the filing of the district court action – even if CIS's resolution of the application does in fact take more than 120 days. Because CIS denied Plaintiff's N-400 in

---

[6] Plaintiff also cites to *Amin v. U.S. Citizenship & Immigration Servs.*, 2006 WL 2645137 (N.D. Ohio 2006), in support of this argument. The Court fails to see how that decision is relevant, given that the court expressly stated that § 1447(b) jurisdiction was unavailable because CIS had ruled on the plaintiff's N-400 within 120 days. *Id.* at *3. The court then went on to conclude that there was no jurisdiction under 8 U.S.C. § 1421(c) – providing for *de novo* review of a naturalization application following exhaustion of administrative remedies – because the plaintiff had never filed an N-336.

February 2004, more than five years before Plaintiff filed the present Complaint, there is no jurisdiction over this matter under § 1447(b).

### B.     *Jurisdiction under the APA*

Defendants contend that Plaintiff's APA claims are moot because CIS has since resolved his I-290A, asking CIS to reopen and reconsider the rescission of his lawful resident status, and his N-336, requesting a hearing on the denial of his N-400 naturalization application. Shortly after Plaintiff filed this suit, CIS denied his I-290A on the grounds that he failed to demonstrate that his birth certificate was not fraudulent, leading CIS to institute removal proceedings against him, and those proceedings then supplied the basis for CIS's denial of his N-336. Plaintiff argues that there is jurisdiction under the APA, specifically under 5 U.S.C. § 702 and 5 U.S.C. § 706(1), and also under 28 U.S.C. § 1361.

Plaintiff first contends that jurisdiction exists under § 702 and § 706(1) to remedy unreasonable agency delay. 5 U.S.C. § 702 extends the right to judicial review to "[a] person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute . . . ." The scope of that review is set forth in 5 U.S.C. § 706, under which Plaintiff asserts jurisdiction "to compel agency action unlawfully withheld or unreasonably delayed." § 706(1).

The Court agrees with Defendants that the Court lacks subject matter jurisdiction because CIS's rulings on Plaintiff's I-290A and N-336 have mooted these claims. *See Charleston Housing Auth. v. U.S. Dep't of Agric.*, 419 F.3d 729, 739 (8th Cir. 2005) (mootness is a matter of subject matter jurisdiction). Because the Court can only have jurisdiction over Plaintiff's claims under these provisions to the extent they assert that CIS's decisions on these matters were "unlawfully withheld" or "unreasonably delayed," the Court cannot use these jurisdictional grants,

as Plaintiff suggests, to take the further step of invalidating CIS's denials. Simply put, Plaintiff may not assert jurisdiction under a provision that gives the Court jurisdiction to compel CIS to act when CIS has in fact already acted.[7] *Cf. Bello-Camp v. Attorney Gen., U.S.*, 2009 WL 813146, at *8 (M.D. Fla. 2009) (no right to judicial review under APA for delay in processing background checks for naturalization applicants whose applications were granted).

The Court is also unable to grant any relief to Plaintiff by forcing CIS to hold a hearing on his N-336 under 28 U.S.C. § 1361. § 1361 extends jurisdiction over actions "in the nature of mandamus" to compel an agency "to perform a duty owed to the plaintiff," and it is true that the statutory provisions and accompanying regulations that allow an applicant to file an N-336 clearly contemplate that CIS will hold an administrative hearing on the matter. *See* 8 U.S.C. § 1447(a) ("If, after an examination under section 1446 of this title, an application for naturalization is denied, the applicant may request a hearing before an immigration officer."); 8 C.F.R. § 336.2(b) ("Upon receipt of a timely request for a hearing, the Service shall schedule a review hearing before an immigration officer . . . ."). It would be futile for the Court to order such a hearing at this point, however, given that CIS has concluded that it was obligated to deny that request based on the institution of removal proceedings. *See* 8 U.S.C. § 1429 ("[N]o application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding . . . ."). In sum, if Plaintiff is in fact entitled to review of his naturalization

---

[7] Plaintiff does argue that CIS's denials of his N-336 and I-290A are void, in that both decisions were ultimately based on the rescission of his lawful permanent resident status, which Plaintiff claims is invalid based on CIS's failure to personally serve him with a notice of that action, as required by 8 C.F.R. § 246.1, and also based on the statute of limitations for such rescission in 8 U.S.C. § 1256. This does not affect the Court's ability to assume jurisdiction under APA provisions only authorizing mandamus-type relief, however, and furthermore, the Court finds that Plaintiff will have the opportunity to raise these issues in his § 1421(c) claim in the companion case.

application on the merits, it will be through *de novo* review in his companion case, as it would be wasteful for the Court to order CIS to hold a hearing on his N-336, when it is clear that CIS will summarily deny it pursuant to § 1429.[8]

As such, the Court finds that Defendants are entitled to dismissal of Plaintiff's claims under the APA. Plaintiff's APA claims are based on jurisdictional grants authorizing district courts to compel agency action, and because CIS has already acted on Plaintiff's I-290A and N-336, his claims are moot and the Court lacks subject matter jurisdiction to consider them.

## IV.   CONCLUSION

The Court concludes that Plaintiff's claims under 8 U.S.C. § 1447(b) and the APA, 5 U.S.C. §§ 702, 706(1) and 28 U.S.C. § 1361, must be dismissed for lack of subject matter jurisdiction. The Court lacks jurisdiction under § 1447(b) because that provision only authorizes district court review where CIS fails to act on a naturalization petition within 120 days, and although CIS's review did take longer than that specified period, it did finally rule on Plaintiff's N-400 several years before he filed the present Complaint. With respect to Plaintiff's APA claims, the Court lacks subject matter jurisdiction because Plaintiff asserts jurisdiction under provisions permitting the Court to force an agency to act, but there is no longer any action to compel given that CIS has since ruled on Plaintiff's N-336 and I-290A.

Although the Court is convinced that this is the correct result, it is a harsh one for Plaintiff, who has been attempting now for nearly six years to obtain a hearing in order to argue that the birth certificate he submitted in connection with his naturalization application was not

---

[8] The parties have briefed the Court on the effect of § 1429 on the Court's ability to grant Plaintiff relief, and on whether CIS had grounds for instituting removal proceedings, but the Court finds that it does not need to reach those issues to rule on the present Motion. The Court anticipates, however, that these topics will be a focal point in resolving Plaintiff's § 1421(c) claim.

fraudulent. Inexplicably, and through little fault of his own, CIS has continuously and repeatedly failed to respond to his requests, and it was only the filing of this lawsuit that prompted action – unfortunately for Plaintiff, in the form of summary denials. It certainly appears to the Court that Plaintiff has salient and persuasive arguments concerning CIS's errors in rescinding his lawful permanent resident status and instituting removal proceedings against him; as noted above, Plaintiff will have the opportunity to be heard on those issues in his companion case before this Court, seeking *de novo* review of the denial of his naturalization application under 8 U.S.C. § 1421(c).

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss for Lack of Jurisdiction [doc. #4] is **GRANTED**.

Dated this 18th Day of February, 2010.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE